## LLOYD et al. v. UNITED STATES.
### No. 7588.

Circuit Court of Appeals, Fifth Circuit.
March 30, 1935.

Mack Taylor, of Fort Worth, Tex., for appellants.

A. W. W. Woodcock, Sp. Asst. to Atty. Gen.

Before BRYAN, SIBLEY, and WALKER, Circuit Judges.

BRYAN, Circuit Judge.

Appellants, Lloyd and Cox, were convicted of using the mails for the purpose of executing a scheme to defraud, and for obtaining money by means of false and fraudulent pretenses and representations, in violation of 18 USCA § 338.

The only assignment of error we are called upon to or shall consider raises the question whether the trial court erred in refusing to direct verdicts in their favor. The other assignments are either so general or so baseless as to fail to present anything for our consideration.

The indictment alleges, and the evidence for the prosecution was sufficient to authorize the jury to find, that appellants agreed that they would organize the Lloyd Oil Corporation for the purpose of dealing in oil lands and leases, and sell shares of its stock to investors who could be induced to purchase at prices greatly in excess of the value of such shares; acquire oil leases and sell them to the corporation for vastly more than their cost to appellants, or their true value; use the assets of the corporation for their own benefit; offer shares of stock below par, and offer, in addition, so-called production notes and falsely represent that those notes were secured by one-fourth of oil to be produced from eight wells which they proposed to drill; falsely represent that leases for which less than $30,000 had been paid had cost over $750,000; represent the stock as a safe and profitable investment when in fact the corporation was being operated at a loss. Cox bought a lease for $2,500 which was paid for with the corporation's money and sold a half interest to the corporation for $50,000 in cash and stock of the par value of half a million dollars. The contention is made on behalf of Cox that when these transactions were made, he had no official connection with the corporation. But even so, although there was testimony sufficient to support the inference that he was then managing the affairs of the corporation, he used not his but the corporation's money with which to pay the purchase price, and therefore could not justly claim to be the purchaser. In 1931 and 1932 the gross receipts from the sale of oil were not enough to pay the salaries of officers, but during those years appellants received $455,000 from the sale of stock of the corporation, whose assets, according to testimony for the government, were worth only about $35,000. Shares of the corporation's stock of the par value of $750,000 were issued to Lloyd and two other incorporators, but the proof is almost conclusive that none of them paid anything in money or other property for those shares. The evidence leaves no doubt that appellants mailed or caused to be mailed the letters described in the indictment, or that those letters were mailed for the purpose of carrying out the stock selling plan

adopted by appellants. Nor can there be any doubt that the representations which appellants made for the purpose of selling the corporation's stock were false. The stock, if it had any value, was worth only a small fraction of the price for which it was sold. The leases which the corporation owned were valued at more than twenty times their real worth, and the money received from the purchasers of the stock was more than ten times the value of the corporation's entire assets. Whether these false representations were made in good faith was a question for the jury. The conclusion is that the trial court did not err in denying the motions for directed verdicts.

The judgment is affirmed.